**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARCELLIS BLACKWELL, <br><br> Defendant. | Case No. 4:23-CR-505 RLW/PLC |

**DEFENDANT'S MOTION FOR REVOCATION OF THE**
**MAGISTRATE JUDGE'S DETENTION ORDER**

Defendant Marcellis Blackwell moves under 18 U.S.C. § 3145(b) for revocation of the magistrate judge's detention order docketed at ECF No. 17.  The district court considers the detention issue *de novo*.  *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (*en banc*).  Mr. Blackwell respectfully moves for an order revoking the detention order and granting release under 18 U.S.C. § 3142.  The argument and authority supporting this motion appear in the supporting memorandum filed with this motion.

Respectfully submitted,

Dated: November 14, 2023

*/s/ Evan C. Greenberg*
Evan C. Greenberg #271356CA
The Law Offices of Evan Greenberg, LLC
231 S. Bemiston Ave., Suite 800
St. Louis, MO 63105
Phone: 314-403-2039
Fax: 650-326-9704
Email: evan@evangreenberglaw.com
Attorney for Defendant

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MARCELLIS BLACKWELL,<br><br>    Defendant. | Case No. 4:23-CR-505 RLW/PLC |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF THE MOTION FOR REVOCATION OF THE MAGISTRATE JUDGE'S DETENTION ORDER**

**INTRODUCTION**

Defendant Marcellis Blackwell should be released under 18 U.S.C. § 3142 because the government has not met its burden for pretrial detention. This case does not involve any presumption of detention. Mr. Blackwell has extensive family ties to the St. Louis area and has no criminal history. The only alleged misconduct from his entire life involves his work as a police officer, and he has resigned his employment and will not be in a similar position while on pretrial release. Conditions of release can reasonably assure his appearance in court and the safety of any other person and the community, and the government has not proven otherwise. Mr. Blackwell respectfully moves for the revocation of the detention order and for his release under the Bail Reform Act.

**PROCEEDINGS BEFORE THE MAGISTRATE JUDGE**

The Indictment was filed September 27, 2023, and charges Mr. Blackwell with 21 counts all related to alleged conduct while he worked as a police officer with the North County Police Cooperative. ECF No. 1. The government moved for pretrial detention and a detention hearing. ECF No. 4. The government argued that Mr. Blackwell abused his police authority in the alleged offenses. *Id.* at 3. For a risk of flight, the government

1

noted Mr. Blackwell's prior employment as an "over-the-road truck driver" and claimed he had "few, if any, ties to the Eastern District of Missouri." *Id.*  The government also argued there was a risk that Mr. Blackwell would obstruct justice or attempt to do so, or that he would attempt to threaten or intimidate a prospective witness.  *Id.* at 3.  The government claimed Mr. Blackwell had appeared at one alleged victim's court date in Illinois "when there was no reason, other than intimidation, for him to be present." *Id.*  At the initial appearance, the detention hearing was continued at the defense's request to October 4, 2023.  ECF No. 6.  The magistrate judge held the detention hearing on October 4, a transcript of which is filed with this motion.

The same day as the detention hearing, the magistrate judge issued an order of detention.  ECF No. 17.

## ARGUMENT

I. **This is not a presumption case, and the government failed to meet its burden to authorize pretrial detention.**

   A. **The legal standard setting forth the government's burden for a detention order.**

This case does not involve any presumption of detention, so the government bears a heavy burden to obtain a detention order.  A defendant may not be detained pretrial unless the government meets its burden regarding (1) safety of the community, and (2) defendant's appearance in court.  Specifically, the government must prove "by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (original ellipsis and italics); 18 U.S.C. § 3142(c), (e)-(f).

Courts consider several factors when determining whether release conditions will reasonably assure both community safety and the defendant's appearance: "(1) the nature

2

and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual." *Abad*, 350 F.3d at 797 (citing 18 U.S.C. § 3142(g)).

> **B.    The government failed to meet its burden regarding the risk of non-appearance.**

Despite the government's repeated claims to the contrary, Mr. Blackwell has close and longstanding ties to this district, dating back to the early 1990s, thirty years ago. In 1991, Mr. Blackwell's mother started dating her future husband and Mr. Blackwell's future stepfather, Charles. *See* 10/4/2023 Reporter's Transcript (hereafter "RT") at 7-8. Charles's family comes from and still lives near Troy, Missouri. Mr. Blackwell has maintained close family relationships with those relatives since the early 1990s, particularly with Charles's mother. Growing up near Chicago, Mr. Blackwell would see his Troy-based family members about every other month, maybe six times a year. *See id.*

After the detention hearing, defense counsel spoke with Charles's mother, who confirmed a longstanding and close relationship with Mr. Blackwell dating from when Mr. Blackwell was a young child. She considers Mr. Blackwell to be her grandson and says their relationship continued to be close as Mr. Blackwell grew up. Just last year, at Mr. Blackwell's invitation, she attended his graduation from Lincoln University, where he received his Peace Officer Standards and Training certificate.

Mr. Blackwell also has an available residence in the nearby Northern District of Illinois, where he grew up and where his mother still lives. His mother will let Mr. Blackwell live with her if he is released.

Thus, Mr. Blackwell has longstanding ties to this district and a nearby district in Illinois, and he has a stable residence in Illinois where he can live with his mother and be subject to monitoring while on pretrial release.

3

The government offers two flawed arguments about a possible risk of non-appearance: Mr. Blackwell's former employment as a truck driver and his lack of ties to the Eastern District of Missouri.  ECF No. 4 at 3 (Detention Motion); RT 5.  We now know Mr. Blackwell has longstanding ties to this district, and as for his former work as a truck driver, the government has never explained how that former employment is probative of a risk of non-appearance.  Commercial trucking involves driving a truck on interstate highways and sleeping in rest stops or truck stops or motels.  It does not instill any special skill or experience that would aid a defendant's flight.  Nearly every defendant before this Court is capable of the same conduct involved in long-haul trucking: driving long distances along the interstate highways.  Truck drivers *in general* are not inherently less likely to appear in court than defendants from other professions, and the government has not argued that there is anything about Mr. Blackwell's *specific* work as a truck driver that makes him unlikely to appear in court.  To the contrary, his experience as a truck driver should make it easier for Mr. Blackwell to comply with a release condition that he maintain employment, as he can work as a driver within his district of residence.

In sum, the Court should revoke the detention order because the government failed to meet its burden of proving that no conditions can reasonably assure Mr. Blackwell's appearance in court.  He can be monitored by pretrial services and subject to electronic monitoring or even home detention.

    **C.**    **The government failed to meet its burden of producing clear and convincing evidence that release conditions cannot reasonably assure the safety of the community.**

Nothing in the government's detention motion or the bail report offers any evidence of a danger to the community outside the context of Mr. Blackwell's employment as a police officer.  There is no record of any criminal history or any prior

alleged crimes that did not result in a conviction. The government failed to present clear and convincing evidence regarding the risk to any person or the community.

The government's detention motion argued a broader type of risk than will justify detention under 18 U.S.C. § 3142. Under § 3142(e)(1), detention is not authorized unless the Court finds that no conditions can reasonably assure "the safety of any other person and the community[.]" Yet the government has relied on a claimed risk that "defendant would obstruct justice or attempt to obstruct justice, or attempt to threaten, or intimidate a prospective witness." ECF No. 4 at 3. The government's argument is too broad, as not *all instances* of obstruction or threatening witnesses would qualify as a risk to "the safety of any other person and the community" under § 3142(e)(1). In support of their broad argument, the government proffered that when alleged victim R.M. went to his own court date in Illinois, Mr. Blackwell appeared at the courthouse too, "when there was no reason, other than intimidation, for him to be present." ECF No. 3 at 4. But during the hearing, defense counsel proffered that data from seized cell phones would contradict the government's argument; defense counsel proffered that the phone data should show that on R.M.'s court date, Mr. Blackwell was communicating in real time with another police officer about what he was doing. Counsel argued that if Mr. Blackwell went to R.M.'s court date in Illinois to personally intimidate R.M. and obstruct justice, Mr. Blackwell certainly would not have told another officer about what he was doing. The government did not refute defense counsel's proffer that the phone data showed real-time communications with another officer at the time of R.M.'s Illinois court hearing.[1] *See generally* RT 12-16.

The government's argument in favor of a risk to public safety depends nearly entirely on the alleged conduct in this case. All the alleged conduct, however, occurred in the context of Mr. Blackwell's employment as a police officer. The Indictment

---

[1] The defense does not have a copy of the phone data.

5

broadly charges that Mr. Blackwell committed crimes while on duty when the alleged victims were detained or under arrest. The government has not presented any evidence that Mr. Blackwell ever harmed anyone or put anyone's safety at risk outside the context of working as police officer. Mr. Blackwell no longer serves as a police officer and obviously would not serve as an officer if released pending trial. In essence, all of the alleged criminal conduct is limited to the unique context of working as a police officer, and Mr. Blackwell will not serve in that role anymore.

Another part of the government's argument regarding safety of the community also no longer applies now that Mr. Blackwell is not a police officer. The government argued that the "safety of the community" was put at risk when Mr. Blackwell, after arresting someone for a crime, allegedly told the suspect that their case would not reach the prosecutor's desk. RT 14:23-15:2. The government's argument was that he risked public safety by not fully prosecuting the people he arrested "for [doing] something that was concerning to the safety of the community." *Id.* at 14. Mr. Blackwell no longer has any police authority so he cannot arrest anyone or endanger public safety by allegedly letting arrestees avoid prosecution.

In sum, the government failed to meet its burden of producing clear and convincing evidence of a risk to the safety of any person or the community. There is no criminal history and no history of any misconduct outside of being employed as a police officer. Because the government failed to meet its burden on this factor, the Court should revoke the revocation order and grant Mr. Blackwell's release on conditions that can reasonably assure the safety of the community.

## CONCLUSION

Mr. Blackwell's only reported misconduct concerned his work as a police officer and the unique circumstance of having made an arrest or detention. He will not encounter that unique circumstance again because he is no longer employed as an officer. Under the totality of the circumstances, the government failed to meet its burden to

6

justify detention, and Mr. Blackwell respectfully asks that this Court revoke the detention order (ECF No. 17) and enter a new order releasing Mr. Blackwell under 18 U.S.C. § 3142(a), (b).

                        Respectfully submitted,

Dated: November 14, 2023        */s/ Evan C. Greenberg*
                                    Evan C. Greenberg #271356CA
                                    The Law Offices of Evan Greenberg, LLC
                                    231 S. Bemiston Ave., Suite 800
                                    St. Louis, MO 63105
                                    Phone: 314-403-2039
                                    Fax: 650-326-9704
                                    Email: evan@evangreenberglaw.com
                                    Attorney for Defendant