**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )  | |
| )  | |
| **Plaintiff,** )  | |
| )  | |
| **vs.** )  | **Case No.  4:23-CR-505 MAL/PLC** |
| )  | |
| **MARCELLIS BLACKWELL,** )  | |
| )  | |
| **Defendant.** )  | |

## Report and Recommendation

This matter is before the Court on Defendant's Motion to Suppress, which includes a request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). [ECF No. 67] The Government filed a response in opposition. [ECF No. 82] The Court held an evidentiary hearing on the motion and the parties filed post-hearing memoranda detailing their positions in light of the evidence adduced at the hearing. [ECF Nos. 118 & 121]

### I.    Background

The Government charged Defendant with nineteen counts of deprivation of constitutional rights in violation of 18 U.S.C. § 242,[1] alleging Defendant, while acting under color of law,

---

[1] The statute provides, in relevant part:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States,… shall be fined under this title or imprisoned not more than one year, or both…and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse… shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 US.C. § 242

willfully deprived nineteen separate victims of their right to bodily integrity by subjecting them to abusive sexual contact while restrained. [ECF No. 83] All nineteen counts seek a sentencing enhancement for kidnapping and one count includes an additional sentencing enhancement for aggravated sexual abuse. [ECF No. 83]  The Government also charged Defendant with sixteen counts of altering, concealing or falsifying records in violation of 18 U.S.C. § 1519,[2] alleging Defendant knowingly altered, concealed, covered up, and falsified police records and included false statements in his written reports. [ECF No. 83]

On May 9, 2025, the Court granted the Government's motion to dismiss Count 35 of the second superseding indictment alleging a violation of 18 U.S.C. §1519, resulting in only fifteen remaining counts related to that offense. [Docket Entry 104] Defendant filed a Motion to Dismiss all counts charging violations of 18 U.S.C. §1519 [ECF No. 94] and a Motion Dismiss sixteen of the counts charging violations of 18 U.S.C. § 242 or, alternatively, for a bill of particulars which remain pending. [ECF Nos. 94 & 95] The Government filed a Motion to Strike Surplusage from the counts charging violations of Section 1519 which also remains pending. [ECF No. 102]

In his motion to suppress, Defendant seeks to suppress evidence derived from a search of two cellular phones seized at the time of his arrest, one from his person and another from his vehicle, and for a Google Account for an email address associated with the cellular phones. [ECF No. 67]  Defendant argues the evidence should be suppressed because: (1) the cellular phone

---

[2] Section 1519 states:

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States…or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519

warrants were overbroad and lack particularity; and (2) the Google Account warrant lacked probable cause and particularity, was overbroad, and relied on tainted information obtained from the search of the cellular phones to establish probable cause. [ECF No. 67]  Defendant also argues the search of the cellular phones exceeded the scope authorized by the warrants. [ECF No. 67] Defendant requests a *Franks* hearing to determine whether the affiant, Special Agent Darren Boehlje of the Federal Bureau of Investigation, intentionally or with reckless disregard for the truth, included false or misleading statements and omitted material information from the supporting affidavits. [ECF No. 67] Defendant also asserts the good-faith exception to the warrant requirement does not apply because the affidavits included false statements and material omissions, the warrants are facially deficient, and the searches exceeded the terms of the warrants. [ECF No. 67]

The Government opposes Defendant's motion to suppress contending: (1) the warrants are supported by probable cause, not overbroad, and sufficiently particular, and  (2) even if there was no probable cause, investigators reasonably relied on the warrants. [ECF No. 82]  The Government concedes that location data and records prior to November 8, 2022 are outside of the scope and temporal constraints of the cellular phone warrants and states it will not utilize such records. [ECF No. 82 at 10, fn.6] The Government, however, counters Defendant is not entitled to a *Franks* hearing because he failed to make a substantial preliminary showing that: (1) Agent Boehlje, intentionally or with reckless disregard for the truth, made false or misleading statements in the supporting affidavits or omitted material information from the supporting affidavits, or (2) the affidavits do not establish probable cause if the allegedly false or misleading statements are not considered or if the allegedly omitted information is included. [ECF No. 82]

## II.    Factual Background

3

A.  <u>Search Warrant Application for the Cellular Phones</u>

On July 13, 2023, Agent Boehlje applied for search warrants for the cellular phones recovered at the time of Defendant's arrest.[3] [Ex. 1] The application states the devices were in the FBI's possession and describes the property to be searched as a Motorola smartphone, unknown model (Subject Device #1), and a Samsung smartphone, Model Number SM-S918U (Subject Device #2), and included each phone's International Mobile Equipment Identity number. [Ex. 1] In the affidavit, Agent Boehlje set forth the following facts related to the alleged offenses: on Saturday June 3, 2023, Defendant Marcellis Blackwell, a police officer with the North County Police Cooperative (NCPC), arrested D.W.1 for unlawful possession of a firearm following a traffic stop. [*Id.* at 5] Defendant handcuffed D.W.1's hands behind his back and placed him in the backseat of the police vehicle to transport him to the St. Ann Jail for booking. [*Id.*]

On the way to the jail, Defendant took a detour, pulling into the Normandy High School parking lot and parking behind a row of school buses. [*Id.*] Defendant removed D.W.1 from the vehicle and offered him a "Newport long" cigarette, which D.W.1 accepted. [*Id.*] Defendant told D.W.1 that Defendant needed to search D.W.1 again before proceeding to the jail. [*Id.*] While D.W.1's hands remained handcuffed behind his back, Defendant, donning black latex gloves, put his hands inside of D.W.1's underwear and fondled his genitalia. [*Id.* at 5-6] Defendant also put his cellular phone down D.W.1's underwear. [*Id.* at 5] Agent Boehlje averred that D.W.1 "noticed the camera light on the phone to be activated" and "believed [Defendant] could have been recording with his cell phone." [*Id.* at 5-6]

Defendant then transported D.W.1 to the jail for booking. [*Id.* at 6]  After D.W.1 was released Defendant drove D.W.1 home, and advised him that he "did not need to worry about a

---

[3] Agent Boehlje filed a single application seeking issuance of two warrants, one for each of the cellular phones. [Ex. 1]

gun charge" because Defendant was not going to take the case to the prosecuting attorney's office. [*Id.*]

Defendant activated his body camera after initiating the traffic stop of D.W.1 but turned it off approximately thirty minutes later.  [*Id.*] Defendant "was out of service following the traffic stop for approximately one and one-half hours" and Defendant's interaction with D.W.1 in the school parking lot was not captured by Defendant's body camera. [*Id.*]

The next day, on June 4, 2023, D.W.1 filed a written complaint against Defendant with NCPC, alleging Defendant "dug his hand into my pants and began to play with my genitals" after his arrest. [*Id.*]  NCPC initiated a criminal investigation during which it obtained surveillance footage from a business neighboring the school depicting Defendant's patrol vehicle entering the school parking lot, and driving to the back of the lot and out of view at the time of the reported incident. [*Id.* at 6-7] The surveillance footage shows Defendant's patrol vehicle leaving the parking lot approximately fifteen minutes later. [*Id.* at 7]

On June 7, 2023, NCPC Major Ron Martin advised Defendant of the complaint against him and his Miranda rights, and arrested Defendant. [*Id.*] At the time of his arrest, officers recovered the Samsung smartphone from Defendant's person. [*Id.*] During a subsequent search of Defendant's personal vehicle, conducted pursuant to Defendant's consent, officers recovered the Motorola smartphone from the center console, as well as a pack of Newport "long" cigarettes, black latex gloves, and bottle of Vaseline lotion.  [*Id.*]

During transport to the jail, Defendant inquired how many charges had been filed against him. [*Id.* at 8] Major Martin told Defendant "one" and Defendant asked if the victim alleged that Defendant "put his finger up his butt[.]"  [*Id.*]  Major Martin told him "no," and Defendant responded, "that's not so bad." [*Id.*]  Major Martin and NCPC Lieutenant Mark Brown interviewed

Defendant at the St. Ann Jail, which was recorded and subsequently provided to the FBI, before transporting Defendant to the St. Louis County Jail. [*Id.*]  During transport to the St. Louis County Jail, Defendant asked Major Martin if the victim reported Defendant putting "his nightstick up the victim's butt" and Major Martin responded negatively. [*Id.*]  Agent Boehlje averred that "Martin believed that [Defendant] was asking questions in an attempt to identify the victim associated with the complaint that led to [Defendant's] arrest, leading Martin to believe there were possibly additional victims." [*Id.*]

On June 8, 2023, St. Louis County charged Defendant with one felony count of first-degree Sodomy or Attempted Sodomy. [*Id.* at 8]  Defendant's arrest was reported by the local media. [*Id.*] Soon after, NCPC received reports from others claiming to have been victims of a similar assault after their arrest by Defendant. [*Id.*] Agent Boehlje asserted Defendant had no police experience prior to NCPC hiring him on May 31, 2022, and the victims reported Defendant arrested them between November 8, 2022, through June 4, 2023. [*Id.* at 9]

Agent Boehlje and FBI Task Force Officer Jordan Willer interviewed three of the victims on June 28, 2023 and, as of the July 13, 2023 warrant application, additional victim interviews were scheduled with the FBI. [*Id.*] Agent Boehlje averred that "[d]uring interviews conducted by both the FBI and NCPC, multiple victims stated [Defendant] appeared to use his personal cell phone flashlight, and possibly the camera during the 'search' [Defendant] conducted on them" and that Defendant had "cell phone contact, phone calls and text messages with some of the victims following their arrests." [*Id.*]

Agent Boehlje attested to his training, knowledge, and experience investigating civil rights violations by public officials, including police officers, and to his familiarity investigating "individuals who use electronic means to research, plan, communicate, coordinate, document and

6

carry out civil rights violations." [*Id.* at 1] Based on his experience, Agent Boehlje stated the cellular phones were smartphones possibly capable of serving as wireless telephones, digital cameras, portable media players, and GPS navigation devices. [*Id.* at 2-5, 10] As a result, the devices could send, receive, and store text messages and emails; take, send, receive and store still photographs and moving video; and create and keep log files associated with calls and text messages send from and received by the device. [*Id.* at 2-3, 10] The devices could serve as portable computers and digital video recording devices, and, in Agent Boehlje's experience "examining data stored on devices of this type can uncover…evidence that reveals or suggests who possessed or used" the cellular phones. [*Id.* at 5]

Agent Boehlje requested warrants to search for "all records and information" on the cellular phones related to violations of 18 U.S.C. § 242 occurring after November 8, 2022. [*Id*, Attachment B] Specifically, the warrants sought information regarding: (1) call logs, including deleted logs, showing phone numbers called and received; (2) evidence of user attribution showing who used or owned the cellular phones; (3) internet browsing history; (4) photographs, videos, and other forms of media documenting the events that are the subject of the warrant; (5) any and all contact lists or address books regarding co-conspirators or victim contact information; (6) text message records, including content of the message and logs of sent and received messages; (7) any and all documents, notes, and records, including email correspondence relating to the matters set forth in the affidavit; and (8) any and all documents, notes, and records relating to ownership and usage of the phones. [*Id.* Attachment B] The devices were subsequently searched pursuant to the warrants.

B.  Search Warrant Application for the Google Account

In September 2023, a grand jury for the U.S. District Court for the Eastern District of Missouri indicted Defendant on multiple counts of violations of 18 U.S.C. § 242 and 18 U.S.C.

§1519. [Ex. 2 at 10] On November 14, 2023, Agent Boehlje submitted an application for a search warrant for a Google storage account link to an email address associated with the cellular phones. [Ex. 2] In the affidavit, Agent Boehlje set forth many of the facts contained in the cellular phone warrant application, as well as additional information. [*Id.*] Agent Boehlje attested that the search of the Samsung smartphone revealed a video of Defendant sexually assaulting D.W.1, with D.W.1's genitals clearly visible in the video. [*Id.* at 9] The Samsung smartphone held "[n]umerous other videos" depicting "similar activity[,]" including "several" videos portraying Defendant touching and recording arrestees' genitalia. [*Id.*] Law enforcement identified 18 victims, with numerous victims confirming they were sexually assaulted by Defendant while in custody and handcuffed. [*Id.*]

In April 2023, a community behavioral health liaison worker performed a ride along with Defendant. [*Id.*] The worked reported to investigators that, during the ride along, Defendant purchased a new cellular phone at a phone store but retained "his old broken phone" instead of trading it in. [*Id.*]

Defendant's bank records demonstrate that Defendant paid a monthly fee for Google storage from June 2022 through June 2023. [*Id.* at 10] Based on Defendant's purchase of additional storage, Agent Boehlje believed evidence of criminal activity by Defendant may be stored in the Google Account beyond that found on the Motorola and Samsung smartphones, including information stored on the third cellular phone retained by Defendant in April 2023. [*Id.*]

Agent Boehlje again attested to his training, knowledge, and experience investigating civil rights violations by public officials, including police officers, and to his familiarity investigating "individuals who use electronic means to research, plan, communicate, coordinate, document and carry out civil rights violations." [*Id.* at 1-2] Based on his experience, Agent Boehlje stated the

8

cellular phones seized from Defendant were smartphones capable of being connected to and backed up to online cloud storage, and that such devices are routinely backed up to cloud storage in case the device is lost or broken. [*Id.* at 3-4, 7] Agent Boehlje attested that a Google Account provides access to email services; contact and address books; a calendar; numerous messaging services; cloud storage services for documents, photographs, and videos; cloud-based notetaking services; automatic backup services; maps and location history; and web browser services. [*Id.* at 10-16] Google's servers also capture a user's internet protocol addresses which, in Agent Boehlje's experience, can provide information on who used or controlled the account, otherwise known as "user attribution" evidence, and can demonstrate physical locations associated with usage.  [*Id.* at 16]

Agent Boehlje requested a warrant to search the Google Account for the specified email account associated with the cellular phones for "information[,]" including "any messages, records, files, logs, or information that may have been deleted but are still available" to Google or which has been preserved by Google from May 31, 2022 through June 7, 2023, related to violations of 18 U.S.C. § 242.  [*Id.*, Attachment B at 1, 3] Specifically, the warrant sought information for the subject account regarding: (1) all contact information and personal identifying information for the account holder; (2) all photographs, visual depictions and video uploaded, downloaded or possessed, as well as Exchangeable Image File data or other associated metadata; (3) all subscriber and billing information; (4) all Google Photos content, data, and information; (5) all records or other information regarding the electronic devices and internet browsers associated with or used in connection with the account; (6) all IP logs, including IP addresses that logged into the account; (7) length of service and source of payments associated with service; (8) all records of communications with Google, LLC regarding the account, including customer service or support

9

contacts; (9) contents of and all data associated with all email, messages, communications, chats or texts in which information associated with the Google Photos account is incorporated; (10) all information regarding any account that accessed photographs, visual depictions, and videos associated with the subject account; (11) all information identifying devices used to access the subject account; (12) all cookie data; (13) all transactional information about the use of the account; (14) all Google Drive data and information; (15) all Google Chat, Google Plus, and Google Hangouts information, data, and content; and (16) location history data. [*Id.*, Attachment B]

## C.  Agent Boehlje's Testimony

On July 9, 2025, the Court conducted a hearing on Defendant's motion to suppress at which Agent Boehlje testified. [ECF No. 116] Prior to completing the warrant affidavit for the cellular phones, Agent Boehlje watched the recording of NCPC's interview with D.W.1 and interviewed several victims, including D.W.2.  (Tr. 19-21, 28)  Agent Boehlje did not speak with D.W.1 prior to writing the affidavit and Agent Boehlje's description of Defendant's alleged assault on D.W.1 in the affidavit came from NCPC's recorded interview and "from several conversations and meeting" between Agent Boehlje and officers with NCPC. (Tr. 28-29)

During his NCPC interview, D.W.1 responded "I don't know" when asked if he thought Defendant was recording with his cellular phone during the assault. (Tr. 32) Agent Boehlje acknowledged D.W.1's response and that none of the FBI reports on the victims' interviews specifically state Defendant used a camera during the assault. (Tr. 32-34) Agent Boehlje stated, however, that that interview reports are not a "verbatim transcript of an interview." (Tr. 39)

Although Agent Boehlje could not remember D.W.2's precise wording during the interview, Agent Boehlje stated it was his "understanding" that both D.W.1 and D.W.2 thought

Defendant might be recording the encounter with his phone. (Tr. 32-33)  Specifically, Agent Boehlje testified:

> So we had two witnesses, D.W.1 and D.W. 2, had talked about using a phone with a light. It was my understating from…D.W.1 that he thought it was possible that [Defendant] was using the camera. It was also my understanding with D.W.2 from the interview that we did with D.W.2, which I was a part of, when he said that either a phone with a light or a flashlight was put in his underwear, it was my understanding from him that he thought they could be recording.

(Tr. 32)

Agent Boehlje explained that, based on his knowledge of cellular phones, when the camera is used the phone's light also comes on. (Tr. 41) Agent Boehlje asserted that D.W.1's and D.W.2's statements supported his assertion in the affidavit that "multiple victims stated" Defendant appeared to use the flashlight on his cellular phone and possibly the camera during the assault. (Tr. 41) Agent Boehlje testified he did not intentionally or recklessly make any false or misleading statement in the affidavits, nor did he omit any facts from the affidavits for the purpose of misleading the reviewing judge. (Tr. 42-43)

## III.   Discussion

### A.  Motion to Suppress Evidence

The Fourth Amendment to the U.S. Constitution "requires the existence of probable cause before a warrant shall issue." *Texas v. Brown*, 460 U.S. 730, 735 (1983). Issuing courts "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit… there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An affidavit must establish "evidence of a nexus between the contraband and the place to be searched." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

It is well-established that, when the issuing judge relies upon the supporting affidavit to

11

issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks and citations omitted); *see also United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (same) (internal quotation marks and citation omitted). Courts, however, "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant[.]" *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009)).

Probable cause may also be found in observations made by trained law enforcement officers. *Ornelas v. United States*, 517 U.S. 690, 700 (1996) ("… our cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists"). Once a judicial officer has issued a search warrant upon a finding of probable cause, that finding deserves great deference. *Id. at 236; see also United States v. Macklin*, 902 F.2d 1320, 1324 (8th Cir. 1990) ("… this court does not conduct a de novo review of the issuing judge's determination, but must instead afford it great deference").

The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions. "In dealing with probable cause … as the very name implies, [a court] deal[s] with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Search warrant applications and affidavits should be read with common sense and not in a

"grudging," "hypertechnical" fashion. *See United States v. Ventresca*, 380 U.S. 102, 108-09 (1965).

The Fourth Amendment requires that search warrants satisfy a particularity requirement, which prevents the issuance of general warrants. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742-43 (2011) ("The principal evil of the general warrant was addressed by the Fourth Amendment's particularity requirement"). The particularity requirement has two dimensions: (1) the warrant must particularly describe the place, person, or thing to be searched, and (2) the warrant must particularly describe the evidence or items to be seized. *Dalia v. United States*, 441 U.S. 238, 255-57 (1979).

1. Cellular Phone Warrants

Defendant seeks to suppress evidence obtained from the search of his two cellular phones and his Google Account. [ECF No. 67] Defendant argues the warrants for the cellular phones were overbroad and lacked particularity because the application only refers to Defendant's use of the phone for calls, text messages, the flashlight, and possible use of the camera but allowed for a search for "any and all documents, notes, and records" relating to the offenses, to ownership and usage of the phones, and to internet history and emails. [ECF No. 67] Defendant contends the warrants' authorization to search for all photographs, videos and other media "documenting the event that are subject of this warrant" "invites a general, exploratory rummaging." [ECF No. 67] In addition to challenging the validity of the cellular phone warrants, Defendant argues the search of the cellular phones exceeded the scope authorized by the warrants by seizing location data and information for November 8, 2022 and earlier.  [ECF No. 67]

The Government responds that the warrants satisfy the Fourth Amendments particularity requirement because they specify that only those records which relate to the crimes specified and

which occurred after November 8, 2022 can be seized. [ECF No. 82] The Government concedes that location data and records prior to November 8, 2022 are outside of the scope and temporal constraints of the cellular phone warrants and states it will not utilize such records. [ECF No. 82 at 10, fn.6]

Here, the affidavit states Defendant used a cellular phone during the commission of at least one offense and to communicate with multiple victims after the commission of other offenses. The cellular phones were recovered from Defendant's person and personal vehicle, along with other objects utilized during one of the offenses.

Agent Boehlje requested warrants to search for "all records and information" on the cellular phones related to violations of 18 U.S.C. § 242 occurring after November 8, 2022. [Ex. 1, Attachment B] Specifically, the warrant sought information regarding call logs, internet browsing history, photographs or videos, contact lists regarding any co-conspirators or victims, and test message records and email correspondence relating to the offenses. [Ex. 1, Attachment B] The warrant also sought evidence of user attribution showing who used or owned the cellular phones both at the time of the offenses and for "[a]ny and all documents, notes and records relating to the ownership and usage of the cell phone being search." [Ex.1, Attachment B]

In support of the warrants, Agent Boehlje attested he was familiar with investigations of "individuals who use electronic means to research, plan, communicate, coordinate, document and carry out civil rights violations" and that, based on his experience, the cellular phones were smartphones capable of  serving as wireless telephones and digital cameras which could send, receive, and store text messages and emails; create and keep log files associated with calls and text messages sent from and received by the device; and take, send, receive and store still photographs and moving video. [Ex. 1 at 2-5, 10] Agent Boehlje also stated that "examining data store on

14

devices of this type can uncover…evidence that reveals or suggests who possessed or used" the cellular phones. [Ex. 1 at 5, 10]

Defendant asserts the warrants were overbroad because they permitted a search for all records related to the offenses and the ownership of the phones which is beyond that supported by the affidavit's allegations that Defendant used the phones for calls, texts, the flashlight, and possibly the camera. [ECF No. 67] The Court finds Defendant's contention that the cellular phone warrants invited "a general exploratory rummaging," and were overbroad and lacked particularity is unfounded.

The application sought, and the warrant granted, permission for law enforcement to search and seize records from the cellular phones for evidence Defendant sexually assaulted arrestees, thus depriving them of their civil rights, in violation of 18 U.S.C § 242, [Ex. 1, Attachment B] The warrant specifically limits the search to "materials…which constitute evidence, instrumentalities, and fruits of the criminal violations of [18 U.S.C. § 242]." [Ex. 1, Attachment B] The warrant sets out the categories of information to be seized and confines the search to a limited, defined period around the time that the offenses occurred. [Ex. 1, Attachment B] Because the application and warrant clearly identified the place to be searched, the items to be seized, and the offense for which law enforcement had established probable cause, the warrant satisfied the particularity requirement.[4] *See Dalia*, 441 U.S. at 255-57 (particularity requires a warrant to describe the place, person, or thing to be searched and the evidence or items to be seized); *United States v. Davis*, No. 4:21CR167 HEA, 723 F. Supp. 3d 677, 687 (E.D. Mo. Oct. 7, 2022) (warrant that allowed search of cellular phone for "all information" was sufficiently particularize because

---

[4] Because the Court finds the search warrants were not invalid for lack of particularity, the Court does not address the arguments regarding the application of the good-faith exception to the warrant requirement. [ECF No. 67]

it limited the search to a two-month period and to record related to the charged offenses). Accordingly, the Court finds the cellular phone warrants were not invalid as overbroad and lacking in particularly and declines to suppress information seized as a result of a search of Defendant's cellular phones on that basis.

Defendant also seeks to suppress location data and all information from November 8, 2022 and earlier seized from his cellular phones on the basis that the search of the cellular phones exceeded the scope authorized by the warrants. [ECF No. 67] The warrants for the cellular phones authorized searches for information relevant to crimes "occurring after November 8, 2022" and did not mention searching for location data. [Ex. 1] Defendant contends the Government exceeded the scope of the warrants by seizing data and searching for information for November 8, 2022 and earlier, and by seizing location data from the phones. [ECF No. 67]  In its response to Defendant's motion to suppress, the Government stated it "concedes that location data is outside the scope of [the cellular phone warrants] and will not utilize any such records. Further, any records on or prior to November 8, 2022 are also outside the temporal constraints of the [cellular phone warrants] and will not be utilized." [ECF No. 82 at 10, fn. 6] Accordingly, the Court recommends granting Defendant's Motion to Suppress with respect to evidence of location data or any record from on or prior to November 8, 2022 seized from the cellular phones.

2.  Warrant for Google Account

Defendant seeks to suppress evidence derived from the search of his Google Account asserting the warrant lacked probable cause that any data from the cellular phones had been uploaded to the account or that the account would contain additional evidence. [ECF No. 67] Defendant contends the warrant was overbroad and lacking in particularity because it: (1) authorized the search and seizure of information beginning in May 31, 2022 despite the lack of

evidence of a crime occurring before November 8, 2022, and (2) authorized the search and seizure of a "vast amount of data" in the form of all information listed in sixteen categories of data. [ECF No. 67]   The Government counters that the Google Account warrant is supported by probable cause demonstrating the cellular phones capability of connecting to the cloud storage and provided extensive information as to how Google's cloud storage operates. [ECF No. 82] The Government contends the warrants are not overbroad or lacking in particularity because it limits the seizure to information constituting "evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 242" and to the time period Defendant was employed a police officer through the date of the phones' seizure. [ECF No. 82]

Agent Boehlje's affidavit in support of the warrant for the Google Account contained much of the information contained in the affidavit for the cellular phones plus additional information. [Ex. 2]  This additional information included that the search of the cellular phones pursuant to the July 13, 2023 warrants revealed a video of Defendant sexually assaulting D.W.1 and other arrestees. [Ex. 2 at 9] A witness reported that Defendant purchased a new cellular phone in April 2023, but retained his old broken phone, and records demonstrate that Defendant purchased additional digital storage from Google. [Ex. 2, at 9-10] Agent Boehlje stated Defendant's purchase of additional storage, despite the considerable amount of storage available on each of the identified cellular phones, suggested that evidence of additional criminal activity by Defendant may be stored in the Google Account.  [Ex. 2, at 10]

Agent Boehlje attested that the cellular phones were capable of being connected to and backed up to online cloud storage, and that such devices are routinely backed up to cloud storage in case the device is lost or broken. [Ex. 2 at 4] Agent Boehlje also averred that a Google Account provides access to email services; contact and address books; a calendar; numerous messaging

17

services; cloud storage services for documents, spreadsheets, photographs, and videos; automatic backup services; cloud-based notetaking services; and maps, as well as web browser services. [Ex. 2, at 10-16] Google's servers also capture a user's internet protocol addresses which, in Agent Boehlje's experience, can provide information on who used or controlled the account, otherwise known as "user attribution" evidence, and can demonstrate physical locations associated with usage. [Ex. 2 at 16]

Here, Agent Boehlje sought a warrant to search for "information" within Google's possession and control, included deleted information, from May 31, 2022 through June 7, 2023, for the Google Account for the specified email address associated with the cellular phones. [Ex. 2, Attachment B] The warrant sought information for the subject account in sixteen enumerated categories but limited the information to be seized to information "that constituted evidence, fruits, and instrumentalities of violation of [18 U.S.C. § 242,]" including evidence regarding user information "to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation" and the Account's owner or user. [Ex. 2, Attachment B]

Here, a review of Agent Boehlje's affidavit confirms that it provides sufficient information to establish a nexus between the alleged criminal activity and Defendant's Google Account, thus establishing probable cause for a search of the account. Specifically, the affidavit seeks to obtain information from a Google Account linked to the email address associated with Defendant's cellular phones and the affidavit establishes that Defendant purchased additional storage from the company. Thus, the affidavit connects Defendant's Google Account to his cellular phones which, in turn, connects Defendant to the alleged violations of 18 U.S.C. § 242. The affidavit establishes the broad range of services provided by Google through the Google

Account, the information collected by Google in relation to its accounts, and the many ways this information could constitute evidence of the offenses charged.

The Court also finds the warrant is sufficiently particular because it specifies the account to be searched, the time frame for the information sought, and the information to be sought. The warrant not only sets forth specified categories of information to be seized but limits the seizure to information constituting evidence of violations of 18 U.S.C § 242.

The Court further finds the warrant was not overbroad because it authorized a search and seizure of information between May 31, 2022 and November 8, 2022, the date of the first offense.  Here, the Government charged Defendant with numerous civil rights violations stemming from conduct occurring during his employment as a police officer with NCPC.  Agent Boehlje's affidavit states Defendant arrested the eighteen identified victims between November 8, 2022 and June 4, 2023, but that Defendant's employment with NCPC began on May 31, 2022. Again, Agent Boehlje averred to learning of the existence of third, unidentified cellular phone during the course of the investigation and to his belief that Defendant's purchase of additional storage suggested that evidence of additional criminal activity by Defendant may be stored in the Google Account.  Here, the affidavit establishes sufficient probable cause to search for evidence of criminal activity related to violations of 18 U.S.C. § 242 between May 31, 2022, the date of Defendant's employment as a law enforcement officer, and November 8, 2022, the date of the first identified victim. Accordingly, the Court declines to suppress information seized as a result of a search of Defendant's Google Account.[5]

---

[5] Because the Court finds the Google Account warrant was supported by probable cause and was not overbroad or lacked particularity, the Court does not address the parties' argument regarding the good-faith exception to the warrant requirement. Further, based on the Court's finding that the cellular phone warrants were not invalid, the Court does not address Defendant's challenge to the Google Account warrant on the basis that the warrant improperly relied on information obtained from the search of the cellular phones to establish probable cause. [ECF No. 67]

## B.  Request for a Franks Hearing

"Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  The Eighth Circuit has held that: "[a] defendant may obtain a *Franks* hearing if (1) he makes a 'substantial preliminary showing' that the affiant intentionally or recklessly included a false statement in the warrant affidavit, and (2) the false statement was 'necessary to the finding of probable cause.'" *United States v. Shockley*, 816 F.3d 1058, 1061 (8th Cir. 2016) (citation omitted).  The Eighth Circuit has also repeatedly recognized that "[t]he requirement of a substantial preliminary showing is not lightly met." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).  More to the point, "[a] *Franks* hearing must be denied unless the defendant makes a strong initial showing of deliberate falsehood or reckless disregard of the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (internal quotation marks omitted).

To determine whether a defendant has established the requisite showing for a *Franks* hearing, "[a]llegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (emphasis omitted).  Rather, "the test is 'whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* (internal quotation marks omitted) (quoting *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010)).

---

The Eighth Circuit has extended *Franks* "to allow challenges to affidavits based on deliberate or reckless omissions." *United States v. Gater*, 868 F.3d 657, 659 (8th Cir. 2017), <u>cert. denied</u> 138 S.Ct. 751 (2018) (citing *United States v. Reivich*, 793 F.2d 957, 960-61 (8th Cir. 1986)). In the context of a challenge to a search warrant affidavit based on an omission, a hearing is required:

> … where the defendant makes a substantial preliminary showing that (1) the affiant omitted facts with the intent to mislead the issuing judge, or omitted the facts in reckless disregard of the fact that the omissions would mislead, and (2) the affidavit, if supplemented by the omitted information, could not support a finding of probable cause."

*Id.* at 659-60 (citing *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015)).

1. <u>Alleged False Statements</u>

Defendant requests that the Court grant him a *Franks* hearing on the grounds that he made a substantial preliminary showing that Agent Boehlje knowingly made false or misleading statements in the affidavits supporting the applications for the search warrants, that those statements were made intentionally or with reckless disregard for the truth, and that there would not have been probable cause for the warrants had the statements not been included in the affidavits. [ECF No. 67] Defendant contends Agent Boehlje made the following false statements in the affidavits: (1) that D.W.1 believed Defendant could have been recording with his cellular phone during the assault, and (2) that "multiple victims," specifically the three victims Agent Boehlje interviewed on June 28, 2023, reported Defendant appeared to use his cellular phone's (a) flashlight or (b) camera during the assault.  [ECF No. 67] Defendant argues Agent Boehlje made these false or misleading statements intentionally or with reckless disregard for the truth and that, absent these false statements, the affidavits fail to establish probable cause to search the cellular phones or the Google Account for photos or videos. [ECF No. 67]

21

In his post-hearing brief, Defendant argues Agent Boehlje's testimony establishes that his averment that "multiple victims stated" Defendant used his cellular phone flashlight and possibly his camera during the incidents was false. [ECF No. 118] Defendant contends Agent Boehlje testified that: (1) neither D.W.1 nor D.W.2 "stated" Defendant used his camera during the encounters, and (2) D.W.2 was unsure if Defendant used a stand-alone flashlight or his cellular phone flashlight during the encounter. [ECF No. 118] Defendant argues Agent Boehlje's testimony that he "inferred" that Defendant used his cellular phone camera from D.W.1 and D.W.2's reports does not support his averment that "multiple victims stated" certain facts, and supports a finding that Agent Boehlje intentionally or reckless made false statements in the affidavits. [ECF No. 118]

The Government counters that Defendant has failed to establish that: (1) Agent Boehlje relied on false or misleading statements in the supporting affidavits, (2) that the allegedly false statements were intentionally or recklessly made, and (3) that the allegedly false statements were necessary to the finding of probable cause. [6]   [ECF No. 82, 121].

---

[6] In its post-hearing brief, the Government asserts, in part, that Agent Boehlje's statement that "multiple victims stated [Defendant] appeared to use his personal cell phone flashlight, and possibly the camera during the 'search' [Defendant] conducted on them" was not false or misleading because "[a]s acknowledged by the Defendant and testified to by Agent Boehlje, three victims indicated the Defendant used a flashlight during the assault, and two specifically referenced a phone flashlight. Doc. 67 at 13; Tr. Pp. 30, 32-36." [ECF No. 121 at 6]  The Government appears to be referencing Defendant's assertion in his memorandum in support of the motion to suppress related to the cellular phone warrants that, in addition to D.W.1 and D.W. 2, victim WP also said Defendant "got out his flashlight" during the assault. See Doc. 67 at 13.

While Defendant's assertion in his memorandum was made in reference to the application for the cellular phone warrants and the Government's current assertions are made in reference to both the warrant applications, the record suggests that Agent Boehlje was unaware of W.P.'s statement prior to his completion of the affidavit for the cellular phone warrants on July 13, 2023. Agent Boehlje testified that W.P. lodged his complaint against Defendant with the NCPC on June 8, 2023. (Tr. 29-30) However, Agent Boehlje repeatedly testified that he did not remember if he was aware of the details of W.P.'s report prior to completing the July 13, 2023 affidavit for the cellular phone warrants. (Tr. 29-30, 36-37) Instead, Agent Boehlje testified that "D.W.1 and D.W.2 prior to the [July 13, 2023] search warrant were the only two that talked about using a phone and a light." (Tr. 36)  Accordingly, the Court will not consider whether W.P.'s report that Defendant used "his flashlight" during the incident in reviewing whether Agent Boehlje's statements in the cellular phone affidavits were false or misleading.

In the affidavits supporting the warrant applications,[7] Agent Boehlje averred: (1) D.W.1 stated during his interview that he "noticed the camera light on [Defendant's cellular] phone to be activated [during that assault and] believed [Defendant] could have been recording with his cell phone" and, (2) "[d]uring interviews conducted by both the FBI and NCPC, multiple victims stated [Defendant] appeared to use his personal cell phone flashlight, and possibly the camera during the 'search' [Defendant] conducted on them." [Ex. 1 at 5-6, 9 and Ex. 2 at 5, 8-9] Defendant claims these statements were false because: (1) D.W.1 reported Defendant used his cellular phone flashlight during the assault but was unsure if Defendant made a recording with his phone, and (2) D.W.2 reported Defendant used a flashlight during the assault but did not specify what type of flashlight and did not mention that he believed Defendant used the cellular phone's camera. [ECF No. 67]  In his post-hearing brief, Defendant focuses on Agent Boehlje's wording that "multiple victims stated" because neither of these victims expressly "stated" that Defendant used his camera and only D.W.1 "stated" Defendant utilized the flashlight on his cellular phone. [ECF No. 118] Defendant argues Agent Boehlje's representations about the victims' statements were false as they are not based on the victims' express statements but upon Agent Boehlje's "inferences." [ECF No. 118]

Defendant has failed to make a preliminary showing warranting a *Franks* hearing. Contrary to Defendant's assertion, D.W.1's report that Defendant used his cellular phone's flashlight but did not "know" if Defendant used the cellular phone's camera supports Agent Boehlje's statement that Defendant used the flashlight from his cellular phone and that he "could" or "possibly" could have used the camera during the search.  Agent Boehlje's statements presented

---

[7] Again, Agent Boehlje made these representations first in the July 13, 2023 affidavit in support of the cellular phone warrants. [Ex. 1 at 5-6, 9] Agent Boehlje repeated these statements in the November 14, 2023 affidavit in support of the Google Account warrant. [Ex. 2 at 5, 8-9]

only the possibility that Defendant used the phone's camera. D.W.1's report that he did not "know" if Defendant used the phone's camera did not foreclose the possibility that Defendant utilized the cellular phone's camera, and Agent Boehlje's inference that it was *possible* Defendant used the cellular phone's camera during the "search" was reasonable because Defendant's act of illuminating the victim's genitalia with his cellular phone's flashlight could also be consistent with using the phone's visual recording functions. *See United States v. Good Voice*, No. 3:21-CR-30059-RAL, 602 F. Supp. 3d 1150 (S.D. May 9, 2022) (finding affiant did not inaccurately characterize a victim's statement denying the defendant took photographs or videos during the sexual assault because victim also reported that the defendant interrupted the assault to use his phone to "flash a light" on the victim's genitalia which the court found "could be consistent with the flash of a camera"). While Agent Boehlje did not include D.W.1's verbatim responses in the interviews, Agent Boehlje's statements did not mislead or misrepresent D.W.1's responses. *See Id.*

Further, D.W.2 reported that during the search, defendant utilized "either a phone or a flashlight" and that Defendant "used a phone and its flashlight or a stand-alone flashlight[.]" D.W.2's statement references Defendant's possible use of a his cellular phone flashlight provides some support for Agent Boehlje's statement that "multiple victims stated" Defendant "appeared to use his personal cell phone flashlight[,]" although it does not directly support Agent Boehlje's statement in the affidavit that Defendant "possibly" used the cellular phone's camera.

However, even assuming that Agent Boehlje's statements could be classified as false or misleading, as opposed to simply inartful wording, Defendant has failed to demonstrate that Agent Boehlje's alleged false statements were made knowingly and intentionally, or with reckless disregard for the truth. Agent Boehlje testified he did not conduct the interviews of D.W.1 or

24

D.W.2, that the investigator's report regarding D.W.2's interview was not a verbatim transcript of the interview, and that Agent Boehlje interpreted the victims' statements to be in line with his representations in the warrant applications. (Tr. 32-33) Agent Boehlje's inference that it was *possible* that Defendant used his cellular phone to capture photographs or videos of the victims while in the process of illuminating their genitalia is a reasonable inference and Agent Boehlje's inartful phrasing or misinterpretation of the victims' statements are insufficient to demonstrate reckless or deliberate falsehoods. See *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (emphasis omitted) (internal quotation marks omitted) (quoting *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010)) (To determine whether a defendant has established the requisite showing for a *Franks* hearing, "[a]llegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood. *Franks*, 438 U.S. at 171." )

Further, Defendant has failed to demonstrate that Agent Boehlje's statement that "multiple victims stated" was "necessary to the finding of probable cause." *See United States v. Shockley*, 816 F.3d at 1061.  Here, Agent Boehlje averred that the subject devices were "smartphones" that typically included a broad range of capabilities, including creating call logs that stored names and phone numbers; sending, receiving, and storing text messages and emails; taking, sending, receiving, and storing still photographs and moving videos. [Exs. 1 & 2] Agent Boehlje stated Defendant had "cell phone contact, phone calls and text messages with some of the victims following their arrests[,]" a statement Defendant has not contested as false or misleading.  [Id. at 9]

The evidence that the subject devices were smartphones, combined with Agent Boehlje's statements that Defendant had cellular phone contact with some of the victims and D.W.1's report to police that Defendant used his cellular phone to illuminate his genitals during the encounter and

25

that he was unsure whether Defendant simultaneously used the cellular phone's camera function, supported probable cause to search Defendant's phone for the data sought in the warrants. Simply stated, it was not necessary for "multiple victims" to have reported Defendant's use of his cellular phone's light and camera during the encounters because information that Defendant used the phone during one assault and repeatedly after other encounters was sufficient to support probable cause for the warrants that were issued.

Defendant also contends that Agent Boehlje's affidavit misleadingly suggests that the three victims he interviewed on June 28, 2023 were some of the "multiple victims" who reported Defendant appeared to use his cellular phone's flashlight and camera during the alleged assaults. [ECF No. 67] The Court finds this argument unavailing.

In the affidavits, Agent Boehlje stated the FBI interviewed three victims at a law office on June 28, 2023, but that not all of the victims had been interviewed by the FBI as of the date of the application. [Ex. 1 & 2]  The affidavits further stated that the information regarding Defendant's alleged cellular phone usage during two of the encounters was collected "[d]uring interviews conducted by both the FBI and NCPC[.]" [Ex. 1 & 2] Contrary to Defendant's assertion, the affidavits do not suggest that the three victims interviewed by the FBI on June 28, 2023 were definitely included within the "multiple victims" discussed two sentences earlier. Even if Agent Boehlje's statements could be construed as false or misleading, Defendant has not demonstrated that Agent Boehlje's statements were intentionally or recklessly made, or that they were necessary to the finding of probable cause.

Accordingly, the Court finds Defendant is not entitled to a *Franks* hearing because he has failed to make a substantial preliminary showing that Agent Boehlje knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or that those

26

statements were necessary to the issuing court's probable cause determination.

    2.  <u>Alleged Omissions</u>

Defendant further contends he made a substantial preliminary showing that Agent Boehlje knowingly omitted material information from the affidavits relevant to the determination of and scope of probable cause. [ECF No. 67] Defendant argues Agent Boehlje failed to disclose, with respect to both the cellular phone warrants and the Google warrant, that the incidents where the victims that reported Defendant's use of any light during the alleged assault occurred between June 3, 2023 and June 5, 2023. [ECF No. 67] Defendant also argues Agent Boehlje failed to disclose, with respect to the Google warrant, that the three victims additional who reported Defendant held his phone during the incident all reported that the incidents occurred in April 2023. [ECF No. 67] Defendant contends that Agent Boehlje's omission respecting these narrow time windows allowed law enforcement to obtain warrants spanning a much broader time frame, specifically November 2022 through June 2023 for the cellular phones and May 2022 through June 2023 for the Google Account. [ECF No. 67] Defendant claims the omissions were made intentionally or with reckless disregard for the truth, and there would not have been probable cause for the warrants had the information been included in the affidavits. [ECF No. 67]

The Government counters that Defendant is not entitled to a *Franks* hearing because he failed to demonstrate that Agent Boehlje intentionally or recklessly omitted facts from the supporting affidavits to mislead the issuing judges and that inclusion of the  information would have resulted in denial of the search warrant applications. [ECF No. 82, 121].

Here, the affidavits stated "[a]ll identified victims had been arrested by [Defendant] from November 8, 2022 and through June 4, 2023." [Ex. 1 & 2] They do not state that every victim claimed Defendant utilized his cellular phone, and thus does not give "the misleading impression

that law enforcement had evidence of [Defendant's] camera use spanning" the entirety of the relevant time period as suggested by Defendant. [ECF No. 67]

To the extent this information could be construed as an omission, the record is devoid of evidence that the omissions were either intentional or intended to mislead the issuing judges. Finally, there is no basis to conclude that the issuing judges would have rejected the search warrant applications had this information been included or, that the omitted information supported a conclusion that the applications lacked probable cause.  *See United States v. Riaski*, 91 F.4th 933, 938 (8th Cir. 2024) (court upholds denial of *Franks* hearing where supplementation of affidavit would not alter probable cause finding).

Based on a review of the record before the Court, the Court concludes that Defendant has not made a substantial preliminary showing that any facts were intentionally omitted to mislead the issuing judges.  Defendant also failed to demonstrate that the affidavit, if supplemented by the omitted information, would not support a finding of probable cause. Accordingly, there is no basis in the record for a *Franks* hearing.

## IV.    Conclusion

As already noted, the Government concedes Defendant's claims that the search of the cellular phones exceeded the scope authorized by the warrants by seizing data and searching for information for November 8, 2022 and earlier, and by seizing location data from the phones. [EF No. 67 & 82, fn. 6] The Government has agreed not to utilize any location data or any records from on or prior to November 8, 2022 seized from the cellular phones. [ECF No. 82, fn. 6] Accordingly, the Court recommends granting Defendant's Motion to Suppress [ECF No. 67] with respect to any evidence of location data or information for November 8, 2022 and earlier seized from the cellular phones and recommends denying Defendant's Motion to Suppress [ECF No. 67]

in all other respects.

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress [ECF No. 67] be **GRANTED in part** and **DENIED in part**. The Court recommends granting Defendant's Motion to Suppress with respect to evidence of location data or any record from on or prior to November 8, 2022 seized from the cellular phones and denying Defendant's Motion to Suppress in all other respects.

**The parties are advised that they have fourteen (14) days after service of this Report and Recommendation in which to file written objections to it**, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to review. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990) (per curiam); 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59.

This matter will be set for trial at a later date before the Honorable Maria A. Lanahan, United States District Judge.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of October, 2025