UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:23-CR-505 MAL |
| MARCELLIS BLACKWELL, | ) | |
| Defendant. | ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

1. **PARTIES:**

The parties are the Defendant MARCELLIS BLACKWELL, represented by defense counsel Evan Greenberg, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA:**

A. **The Plea:** Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Counts One, Two, Four, Seven, Nine, Eleven, Thirteen, Fifteen, Seventeen, Eighteen, Twenty, Twenty-Two, Twenty-Four, Twenty-Six, Twenty-Eight, Thirty, Thirty-Two, and Thirty-Four in the Second Superseding Indictment, the United States agrees to move for the dismissal of Counts Three, Five, Six, Eight, Ten, Twelve,

Fourteen, Sixteen, Nineteen, Twenty-One, Twenty-Three, Twenty-Five, Twenty-Seven, Twenty-Nine, Thirty-One, and Thirty-Three at the time of sentencing. Moreover, the Government agrees that no further federal prosecution will be brought in this District relative to the Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Second Superseding Indictment.

**B.** **The Sentence:** The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties agree the United States will recommend a sentence of 360 months (30 years). The parties further agree the Defendant may request a sentence below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3. ELEMENTS:**

**A. Counts One, Nine, and Twenty-Six:**

As to Counts One, Nine, and Twenty-Six, the Defendant admits to knowingly violating Title 18, United States Code, Sections 242 and 250(b)(4)(A), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*First:* Defendant acted under color of law;

*Second:* Defendant deprived the victim of a right secured by the Constitution or laws of the United States, that being, the victim's fundamental right to bodily integrity;

*Third:* Defendant acted willfully;

*Fourth:* Defendant's conduct included abusive sexual contact.

**B. Counts Two, Four, Seven, Eleven, Thirteen, Fifteen, Seventeen, Eighteen, Twenty, Twenty-Two, Twenty-Four, Twenty-Eight, Thirty, Thirty-Two, and Thirty-Four:**

As to Counts Two, Four, Seven, Eleven, Thirteen, Fifteen, Seventeen, Eighteen, Twenty, Twenty-Two, Twenty-Four, Twenty-Eight, Thirty, Thirty-Two, and Thirty-Four, the Defendant admits to knowingly violating Title 18, United States Code, Sections 242 and 250(b)(4)(A), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*First:* Defendant acted under color of law;

*Second:* Defendant deprived the victim of a right secured by the Constitution or laws of the United States, that being, the victim's fundamental right to bodily integrity;

*Third:* Defendant acted willfully;

*Fourth:* Defendant's conduct included abusive sexual contact; and

*Fifth:* Defendant's conduct included kidnapping.

**4. <u>FACTS</u>:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

The North County Police Cooperative ("NCPC") is a law enforcement agency in the Eastern District of Missouri. Among other functions, the NCPC is responsible for responding to and investigating crimes occurring in several municipalities that are located in North St. Louis County, Missouri. Between May 31, 2022 and June 7, 2023, the Defendant was employed by the

NCPC as a police officer. As part of his job as a police officer, the Defendant was sworn to uphold the United States Constitution, as well as the laws of the State of Missouri.

Between November 8, 2022 and June 5, 2023, while on duty and working as a police officer for NCPC, the Defendant willfully deprived ~~19~~ 18 men of a certain right secured and protected by the United States constitution by sexually assaulting them. The Defendant's actions came to the attention of law enforcement on June 4, 2023, when D.W.1 reported the Defendant sexually assaulted D.W.1 during D.W.1's arrest on June 3, 2023. Thereafter, NCPC began an investigation. As more victims came forward, the Federal Bureau of Investigation ("FBI") took over the investigation.

**Count One**

On November 8, 2022, the Defendant conducted a traffic stop of N.S. The Defendant detained N.S. while another officer searched N.S.'s car and checked N.S.'s information on an NCPC computer. During N.S.'s detention, the Defendant engaged in abusive sexual contact with N.S., in that the Defendant held N.S.'s hands behind N.S.'s back with one hand while the Defendant put his other hand in N.S.'s pants and fondled N.S.'s genitals inside his underwear. The incident is captured on the Defendant's NCPC body-worn camera. N.S. did not consent to the Defendant's sexual contact, and the Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

**Count Two**

On November 22, 2022, the Defendant arrested D.T., handcuffed D.T.'s hands behind D.T.'s back and put D.T. in the backseat of the Defendant's police vehicle. While leaving the scene of the arrest, the Defendant deactivated his body-worn camera. Instead of taking D.T. directly to

the St. Ann Police Department ("SAPD") to be booked, the Defendant kidnapped D.T. by taking D.T. to a remote location. While at that location, the Defendant engaged in abusive sexual contact with D.T., in that he put his hand inside D.T.'s pants and underwear and fondled D.T.'s genitals. D.T. remained handcuffed at the time the Defendant fondled D.T.'s genitals and D.T. did not consent to the Defendant's sexual contact. Moreover, the Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions with a personal electronic device. The recording was subsequently recovered on the Defendant's GoogleDrive account. After fondling D.T.'s genitals, the Defendant drove D.T. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of D.T. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Four**

On November 26, 2022, the Defendant arrested K.W. The Defendant handcuffed K.W. and put K.W. in the Defendant's police vehicle. While leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped K.W., in that he took K.W. to a remote location. The Defendant engaged in abusive sexual contact with K.W. when he put his hand inside K.W.'s pants and underwear and fondled K.W.'s genitals. K.W. remained handcuffed at the time the Defendant fondled K.W.'s genitals and K.W. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. After fondling K.W.'s genitals, the Defendant drove K.W. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of K.W. In that report, the

Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Seven**

On March 20, 2023, the Defendant arrested T.D. The Defendant handcuffed T.D.'s hands behind T.D.'s back and put T.D. in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped T.D. in that instead of driving T.D. directly to SAPD to be booked, the Defendant took T.D. to a remote location. While at that location, the Defendant engaged in abusive sexual contact with T.D. in that he put his hand inside T.D.'s pants and underwear and fondled his genitals. T.D. remained handcuffed at the time the Defendant fondled T.D.'s genitals and T.D. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions with a personal electronic device and the recording was subsequently recovered on the Defendant's GoogleDrive account. After fondling T.D.'s genitals, the Defendant drove T.D. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of T.D. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Nine**

On March 27, 2023, the Defendant detained V.W. during a traffic stop. The Defendant put V.W. in the back seat of the Defendant's police vehicle. While V.W. was detained in the back seat, the Defendant engaged in abusive sexual contact with V.W. in that he put his hand inside V.W.'s pants and underwear and fondled V.W.'s genitals. V.W. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done

with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions with a personal electronic device and the recording was subsequently recovered on the Defendant's GoogleDrive account.

**Count Eleven**

On April 15, 2023, the Defendant arrested D.P. The Defendant handcuffed D.P.'s hands behind D.P.'s back and put D.P. in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped D.P. when, instead of driving D.P. directly to SAPD to be booked, the Defendant took D.P. to a remote location. While at that location, the Defendant engaged in abusive sexual contact with D.P. in that he put his hand inside D.P.'s pants and underwear and fondled D.P.'s genitals. D.P. remained handcuffed at the time the Defendant fondled D.P.'s genitals and D.P. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions with a personal electronic device, as the recording was subsequently recovered from the Defendant's cellular phone. After fondling D.P.'s genitals, the Defendant drove D.P. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of D.P. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Thirteen**

On April 19, 2023, the Defendant arrested C.P. The Defendant handcuffed C.P.'s hands behind C.P.'s back and put C.P. in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped C.P. in that instead of driving C.P. directly to SAPD to be booked, the Defendant took C.P. to a

remote location. While at that location, the Defendant engaged in abusive sexual contact with C.P. when he put his hand inside C.P.'s pants and underwear and fondled C.P.'s genitals. C.P. remained handcuffed at the time the Defendant fondled C.P.'s genitals and C.P. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling C.P.'s genitals, the Defendant drove C.P. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of C.P. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Fifteen**

On April 22, 2023, the Defendant arrested T.J. The Defendant handcuffed T.J. behind T.J.'s back and put T.J. in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped T.J. in that instead of driving T.J. directly to SAPD to be booked, the Defendant took T.J. to the back parking lot of NCPC. While at that location, the Defendant engaged in abusive sexual contact with T.J. when he put his hand inside T.J.'s pants and underwear and fondled T.J.'s genitals. T.J. remained handcuffed at the time the Defendant fondled T.J.'s genitals and T.J. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling T.J.'s genitals, the Defendant drove T.J. to SAPD where he was booked. The Defendant subsequently wrote a police

report recounting his arrest of T.J. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Seventeen**

On April 26, 2023, the Defendant arrested D.A. The Defendant handcuffed D.A.'s hands behind D.A.'s back and put D.A. in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped D.A., in that instead of driving D.A. directly to SAPD to be booked, the Defendant took D.A. to a remote location. While at that location, the Defendant engaged in abusive sexual contact with D.A. when he put his hand inside D.A.'s pants and underwear and fondled D.A.'s genitals. D.A. remained handcuffed at the time the Defendant fondled D.A.'s genitals and D.A. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling D.A.'s genitals, the Defendant drove D.A. to SAPD where he was booked.

**Count Eighteen**

On April 27, 2023, the Defendant arrested D.W.3. The Defendant handcuffed D.W.3's hands behind D.W.3's back and put D.W.3 in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped D.W.3 in that instead of driving D.W.3 directly to SAPD to be booked, the Defendant took D.W.3 to a remote location. While at that location, the Defendant engaged in abusive sexual contact with D.W.3 in that he put his hand inside D.W.3's pants and underwear and fondled D.W.3's genitals. D.W.3 remained handcuffed at the time the Defendant fondled D.W.3's genitals

and D.W.3 did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling D.W.3's genitals, the Defendant drove D.W.3 to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of D.W.3 In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Twenty**

On May 14, 2023, the Defendant arrested J.R. The Defendant handcuffed J.R.'s hands behind J.R.'s back and put J.R. in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped J.R. in that instead of driving J.R. directly to SAPD to be booked, the Defendant took J.R. to a remote location. While at that location, the Defendant engaged in abusive sexual contact with J.R. when he put his hand inside J.R.'s pants and underwear and fondled J.R.'s genitals. J.R. remained handcuffed at the time the Defendant fondled J.R.'s genitals and J.R. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered from the Defendant's cellular phone. After fondling J.R.'s genitals, the Defendant drove J.R. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of J.R. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Twenty-Two**

On May 26, 2023, the Defendant arrested D.J. The Defendant handcuffed D.J.'s hands behind D.J.'s back and put D.J. in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped D.J. in that instead of driving D.J. directly to SAPD to be booked, the Defendant took D.J. to a remote location. While at that location, the Defendant engaged in abusive sexual contact with D.J. when he put his hand inside D.J.'s pants and underwear and fondled D.J.'s genitals. D.J. remained handcuffed at the time the Defendant fondled D.J.'s genitals and D.J. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling D.J.'s genitals, the Defendant drove D.J. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of D.J. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Counts Twenty-Four and Twenty-Six**

On May 30, 2023, the Defendant responded to a traffic accident; both K.R. and A.S. were present during the accident. During the course of investigating the accident, the Defendant detained A.S. The Defendant handcuffed A.S.'s hands and put A.S. in the back seat of the Defendant's police vehicle. While A.S. was handcuffed and in the back seat the Defendant engaged in abusive sexual contact with A.S. when he put his hand inside A.S.'s pants and underwear and fondled A.S.'s genitals. A.S. remained handcuffed at the time the Defendant fondled A.S.'s genitals and A.S. did not consent to the Defendant's sexual contact. The Defendant's sexual contact with A.S.

had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

During the investigation, K.R. was placed under arrest. The Defendant handcuffed K.R.'s hands behind K.R.'s back and put K.R. in the back seat of the Defendant's police vehicle. While at the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped K.R. in that instead of driving K.R. directly to SAPD to be booked, the Defendant took K.R. to a remote location. While at that location, the Defendant engaged in abusive sexual contact with K.R. in that he put his hand inside K.R.'s pants and underwear and fondled K.R.'s genitals. K.R. remained handcuffed at the time the Defendant fondled K.R.'s genitals and K.R. did not consent to the Defendant's sexual contact. The Defendant's sexual contact with K.R. had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling K.R.'s genitals, the Defendant drove K.R. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his detention of A.S. and his arrest of K.R. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Twenty-Eight**

On June 3, 2023, M.A. was detained by the Defendant and other NCPC officers. M.A.'s hands were handcuffed behind his back and he was placed in the Defendant's police vehicle. The Defendant subsequently advised M.A. he was under arrest. Prior to leaving the scene, the Defendant deactivated his body-worn camera. The Defendant kidnapped M.A. in that instead of driving M.A. directly to SAPD to be booked, the Defendant took M.A. to a remote location. While

at that location, the Defendant engaged in abusive sexual contact with M.A. when he put his hand inside M.A.'s pants and underwear and fondled M.A.'s genitals. M.A. remained handcuffed at the time the Defendant fondled M.A.'s genitals and M.A. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling M.A.'s genitals, the Defendant drove M.A. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of M.A. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Thirty**

On June 3, 2023, the Defendant pulled over a vehicle D.W.1 was driving. There was a passenger in D.W.1's vehicle. During the stop, the Defendant detained the passenger and searched a bag the passenger had been wearing. In the bag, the Defendant located a firearm. This was captured on the Defendant's body-worn camera. Ultimately, the Defendant arrested D.W.1. The Defendant handcuffed D.W.1 behind his back and put him in the back seat of his police vehicle. The Defendant released the passenger at the scene. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped D.W.1 in that instead of driving D.W.1 directly to SAPD to be booked, the Defendant took D.W.1 to the bus lot of Normandy High School. While at that location, the Defendant engaged in abusive sexual contact with D.W.1 when he put his hand inside D.W.1's pants and underwear and fondled D.W.1's genitals. D.W.1 remained handcuffed at the time the Defendant fondled D.W.1's genitals and D.W.1 did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no

legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling D.W.1's genitals, the Defendant drove D.W.1 to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of D.W.1 In that report, the Defendant falsely stated that EG AA CK the firearm he located in the passenger's bag was in the center console of the vehicle D.W.1 was driving. The Defendant also falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Thirty-Two**

On June 4, 2023, the Defendant arrested W.P. The Defendant handcuffed W.P.'s hands behind W.P.'s back and put W.P. in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped W.P. in that instead of driving W.P. directly to SAPD to be booked, the Defendant took W.P. to a remote location. While at that location, the Defendant engaged in abusive sexual contact with W.P. when he put his hand inside W.P.'s pants and fondled W.P.'s genitals. W.P. was not wearing underwear. W.P. remained handcuffed at the time the Defendant fondled W.P.'s genitals and W.P. did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered from the Defendant's cellular phone. After fondling W.P.'s genitals, the Defendant drove W.P. to SAPD where he was booked. The Defendant subsequently wrote a police report recounting his arrest of W.P. In that report, the Defendant falsely stated his NCPC body-worn camera was active and recorded the entirety of the call.

**Count Thirty-Four**

On June 5, 2023, the Defendant arrested D.W.2. The Defendant handcuffed D.W.2's hands behind D.W.2's back and put D.W.2 in the back seat of the Defendant's police vehicle. Prior to leaving the scene of the arrest, the Defendant deactivated his body-worn camera. The Defendant kidnapped D.W.2 in that instead of driving D.W.2 directly to SAPD to be booked, the Defendant took D.W.2 to a remote location. While at that location, the Defendant engaged in abusive sexual contact with D.W.2 when he put his hand inside D.W.2's pants and underwear and fondled D.W.2's genitals. D.W.2 remained handcuffed at the time the Defendant fondled D.W.2's genitals and D.W.2 did not consent to the Defendant's sexual contact. The Defendant's sexual contact had no legitimate law enforcement purpose and was done with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Defendant recorded his actions and the recording was subsequently recovered on the Defendant's cellular phone. After fondling D.W.2's genitals, the Defendant drove D.W.2 to SAPD where he was booked.

**5. STATUTORY PENALTIES:**

The Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty are:

**A. Counts One, Nine, and Twenty-Six**: imprisonment for not more than 10 years, a fine of not more than $250,000, or both such imprisonment and a fine. The Court may also impose a period of supervised release of not more than three years.

**B. Counts Two, Four, Seven, Eleven, Thirteen, Fifteen, Seventeen, Eighteen, Twenty, Twenty-Two, Twenty-Four, Twenty-Eight, Thirty, Thirty-Two, and Thirty-Four:** imprisonment of any term of years or life, a fine of not more than $250,000 or both such imprisonment and fine. The Court may also impose a period of supervised release of not more

than five years.

6. **U.S. SENTENCING GUIDELINES 2025 MANUAL:**

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

A. **Offense Conduct:**

**COUNT ONE**

(i) **Chapter 2 Offense Conduct:**

(a) **Base Offense Level:** Pursuant to 2H1.1(a)(1), 2A3.4(a)(3) applies. The Base Offense Level under 2A3.4(a)(3) is 12. Two levels are added under 2A3.4(b)(3) because the victim was in the custody of the Defendant.

(b) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: Six levels are added under 2H1.1(b)(1)(B) because the offense was committed under color of law.

(ii) **Chapter 3 and 4 Adjustments:**

(a) **Other Adjustments:** The parties agree the following additional adjustments apply: Three levels are added under 3A1.3 because the victim was restrained.

(b) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section

3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**COUNTS TWO, FOUR, SEVEN, ELEVEN, THIRTEEN, FIFTEEN, EIGHTEEN, TWENTY, TWENTY-TWO, TWENTY-FOUR, TWENTY-EIGHT, THIRTY, and THIRTY-TWO**

**(i)** **Chapter 2 Offense Conduct**:

**(a)** **Base Offense Level**: Pursuant to 2H1.1(a)(1), 2A4.1(a) applies and the Base Offense Level under 2A4.1(a) is 32. Six levels are added under 2A4.1(b)(5) because the victim was sexually exploited.

**(b)** **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: Six levels are added under 2H1.1(b)(1)(B) because the offense was committed under color of law.

**(ii)** **Chapter 3 and 4 Adjustments**:

(a) **Other Adjustments:** The parties agree the following additional adjustments apply: Two levels are added under 3C1.1 because the Defendant willfully obstructed, impeded or attempted to obstruct or impede the administration of justice with respect to the investigation and/or prosecution.

(b) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**COUNTS SEVENTEEN and THIRTY-FOUR**

(i) **Chapter 2 Offense Conduct**:

(a) **Base Offense Level**: Pursuant to 2H1.1(a)(1), 2A4.1(a) applies and the Base Offense Level under 2A4.1(a) is 32. Six levels are added under 2A4.1(b)(5) because the victim was sexually exploited.

(b) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: Six levels are added under 2H1.1(b)(1)(B) because the offense was committed under color of law.

(ii) **Chapter 3 and 4 Adjustments**:

(a) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent

with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

(b) **Other Adjustments:** The parties have no further agreement regarding any other adjustments.

**COUNT NINE**

(i) **Chapter 2 Offense Conduct:**

(a) **Base Offense Level:** Pursuant to 2H1.1(a)(1), 2A3.4(a)(3) applies. The Base Offense Level under 2A3.4(a)(3) is 12. Two levels are added under 2A3.4(b)(3) because the victim was in the custody of the Defendant.

(b) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: Six levels are added under 2H1.1(b)(1)(B) because the offense was committed under color of law.

(ii) **Chapter 3 and 4 Adjustments:**

(a) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**(b) <u>Other Adjustments</u>:** The parties have no further agreement regarding the application of other adjustments.

**<u>COUNT TWENTY-SIX</u>**

**(i) <u>Chapter 2 Offense Conduct</u>:**

**(a) <u>Base Offense Level</u>:** Pursuant to 2H1.1(a)(1), 2A3.4(a)(3) applies. The Base Offense Level under 2A3.4(a)(3) is 12. Two levels are added under 2A3.4(b)(3) because the victim was in the custody of the Defendant.

**(b) <u>Specific Offense Characteristics</u>:** The parties agree that the following Specific Offense Characteristics apply: Six levels are added under 2H1.1(b)(1)(B) because the offense was committed under color of law.

**(ii) <u>Chapter 3 and 4 Adjustments</u>:**

**(a) <u>Other Adjustments</u>:** The parties agree the following additional adjustments apply:

(1) Three levels are added under 3A1.3 because the victim was restrained.

(2) Two levels are added under 3C1.1 because the Defendant willfully obstructed, impeded or attempted to obstruct or impede the administration of justice with respect to the investigation and/or prosecution

**(b) <u>Acceptance of Responsibility:</u>** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**B. Multiple Counts:** The parties agree that none of the Counts group under 3D1.2. Therefore, under 3D1.4, the Defendant's combined offense level will be increased by five levels.

**C. Adjustment for Certain Zero-Point Offenders:** The parties agree that the Defendant is not eligible for a two-level reduction under Section 4C1.1(a), regardless of his criminal history calculation, because his actions involved deprivation of rights under color of law, pursuant to Section 4C1.1(a)(8).

**D. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 48. As a result, the Total Offense Level is treated as an offense level 43. *See* Ch. 5, Pt. A, Application Note. 2.

**E. Criminal History:** The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

**F. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**A. Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**i. Non-Sentencing Issues:** Pursuant to Rule 11(a)(2), the Defendant preserves his right to appeal the denial of his Motion to Dismiss, excluding his claims regarding Count Six (Doc. 95) and Motion to Suppress Evidence (Doc. 67), which was the subject of two Report and Recommendations (Docs. 123 and 124) and which were denied by the court (Docs. 128 and 129). The parties waive all rights to appeal all other non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**ii. Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the Defendant to 360 months (30 years) imprisonment. Otherwise, the adversely affected party—the Defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the Defendant's criminal history category. ~~or (3) substantive reasonableness.~~ EG [initials] CK

**B. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**C. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**A. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**B. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**C. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished

**D. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total

of $1,800, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E. <u>Possibility of Detention</u>:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**F. <u>Fines, Restitution and Costs of Incarceration and Supervision</u>:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The Defendant agrees to provide full restitution to all victims of all charges in the indictment.

**G. <u>Forfeiture</u>:** The Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The Defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the Defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the government's case and any defenses.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the Defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

[INTENTIONALLY LEFT BLANK]

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

8/7/2026
Date

CHRISTINE KRUG
Assistant United States Attorney

7 Aug 26
Date

MARCELLIS BLACKWELL
Defendant

8/7/2026
Date

EVAN GREENBERG
Attorney for Defendant